LANSING COMMUNITY HOTEL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17760.   Promulgated February 13, 1950.

*M. D. Harris, C. P. A.*, and *Charles E. Ecker, Esq.*, for the petitioner.

*A. J. Friedman, Esq.*, for the respondent.

188

## OPINION.

TURNER, *Judge*: The underlying question for determination is whether the $463,100 of debentures represented indebtedness owing by the petitioner, or merely evidenced ownership of stock in it. It is undisputed that the debentures were issued against earned surplus to the extent of $14,373.73, and paid-in surplus to the extent of $448,726.27. Of the latter amount, $445,803.25 resulted from a reduction in par value of the petitioner's par value common stock and the remainder, $2,923.02, represented payments on subscribed for, but unissued, capital stock which were transferred to paid-in surplus in 1938. As to the paid-in surplus of $448,726.27, the respondent concedes that it represents money which originally had been invested in the petitioner. It thus appears that the debentures were issued dollar for dollar against paid-in or earned surplus, both of which the corporation was at liberty to distribute pro-rata to its stockholders,[1] and, even though there was no paying in or borrowing of new money, the consideration for their issuance was in an amount equal to face value.

There is no comprehensive rule by which the question here presented can be determined. Consideration must be given not only to the instrument involved, but to all the surrounding circumstances. While in similar cases the determining factor or factors have varied from case to case, the factors usually stated as determining are: The name given to the certificates, the presence or absence of a maturity date, the source of payments, the right to enforce the payment of principal and interest, participation in management, status with respect to claims of general corporate creditors, and the intention of the parties. *John Kelley Co.*, 1 T. C. 457; affd., 326 U. S. 521.

In the petitioner's minutes, in its books of account, and in its income tax returns, the debentures have been called by that name and the payments thereon have been designated interest. The debentures had a fixed maturity date for the principal and the interest was payable annually on a specified date. While the interest was to be paid "out of available net operating income," the fact that there might, in a given year, be no operating net income, did not relieve the corporation of payment when it did have "net operating income," since it was provided that interest was cumulative. The debenture holders, as such, did not have any right to participate in the management of the petitioner.

The respondent takes the position that there was no fixed and absolute obligation on the part of the petitioner to pay the principal

---

[1] See sec. 5345, vol. 77, Fletcher's Cyclopedia of the Law of Private Corporations.

of and interest on the debentures, contending that the interest was payable only "out of available net operating income" and that the wording and punctuation of the debentures presents a question as to whether there was an obligation at maturity to pay such amount in all events, or only in the event there should be "available net operating income." While it is true that interest was to be paid "out of available net operating income," we do not understand that payment or non-payment of interest was within corporate discretion when it did have "operating net income" available for such payment[2] and that in such case the interest did not become payable in any event, and, further, while there was no provision, as in the *John Kelley Co.* case, for the acceleration of maturity of the obligation on principal in the event of default in the payment of interest, there was no limitation whatever to pay principal when it did become due. In other words, the only reasonable conclusion, we think, is that at maturity the obligation to pay was unqualified and absolute. In our opinion, the principal was payable at the maturity date, irrespective of what the petitioner's "available net operating income" might be on that date or might have been during the interval.

As a further bar to a holding that the indentures represented indebtedness, the respondent contends that to the extent of the paid-in surplus of $448,726.27 the debentures represented capital which originally had been invested in, and placed at the risk of, the petitioner's business by its stockholders and that none of the debentures here involved represented "borrowed money" with respect to which the petitioner had contracted to pay anything for its use. The import of the contention is that it is essential that new or additional money must have been paid in to the corporation in order to constitute the indentures an indebtedness of the petitioner.

Approximately 76 per cent of the debentures issued in the *John Kelley Co.* case was in exchange for outstanding capital stock and the remainder was issued on subscription. In holding that the issue of debentures there involved constituted an indebtedness and the interest was deductible, we made no distinction between those issued in exchange for stock and those issued on subscription. In affirming our holding, the Supreme Court pointed to none. The entire amount of the debentures issued was treated as indebtedness, even though no new money was paid in on account of those issued for stock and the interest thereon was held to be deductible. See also *New England Lime Co.*, 13 T. C. 799.

While in the instant case no outstanding capital stock was retired at the time the debentures were issued, the reduction in 1932 of the par value of the petitioner's par value common stock had the same effect,

---

[2] Cf. *Talbot Mills,* 3 T. C. 95.

with the money represented by the reduction being retained by the petitioner as paid-in surplus. The issuance of the instant debentures in 1942 against such paid-in surplus was the final step in a transaction which had the same effect as an exchange of debentures for stock.

We accordingly hold that the debentures involved herein were evidences of indebtedness and that the petitioner is entitled to the deductions taken for interest paid thereon.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: This was not "interest on indebtedness,"[1] for two reasons. First, it was not interest and, second, there was no indebtedness.

Interest has been defined as payment for the use or forbearance of money.[2] Nothing was contributed to this enterprise either in the first place nor at the time the securities in controversy were issued[3] which can be construed as the contribution of money or even of money's worth. *1432 Broadway Corporation*, 4 T. C. 1158; affd. (C. C. A., 2d Cir.), 160 Fed. (2d) 885; *Swoby Corporation*, 9 T. C. 887; cf. *New England Lime Co.*, 13 T. C. 799. Not even property committed to the venture as in those cases was involved here. There could hence be no payment for the use or forbearance of anything.

There was no indebtedness because the nature of the original participation, constituting an equity interest at the risk of the business, was never changed. Even after the so-called debentures were issued, there was no present indebtedness. Neither the interest payable only out of net "operating income," and only then if "available," nor the principal, was payable in any event; and during these years neither the interest nor the principal partook of the nature of a definitive promise to pay any sum at any time. The most that can be said is that the securities carried a due date some years in the future. Even if nonpayment at that time would create an indebtedness, a point that is by no means clear, there was no real change whatever in the

---

[1] Internal Revenue Code, section 23:

"In computing net income there shall be allowed as deductions:

\* \* \* \* \* \* \*

"(b) INTEREST.—All interest paid or accrued within the taxable year on indebtedness \* \* \*."

[2] Webster's New International Dictionary (1924), p. 1125.

[3] There is some suggestion that the resolution of petitioner's directors, declaring the "dividend," created an indebtedness, the liquidation of which was accomplished by issuance of the debentures. The form of the resolution, however, prevents us from accepting the contention. The distribution was not to be made in money but in debentures. The stockholders were given no option to have the obligation paid in cash. It seems evident that all they were ever entitled to were the debentures themselves. We can not say that any debt ever existed outside the four corners of whatever the debentures themselves provided, or that the corporation received anything of value by the cancellation of such an additional debt.

relationship of the parties before and after the "debentures" were issued; certainly not any during the tax years at bar. The securities came behind creditors and were senior only to the common stock, a position typically held by preferred shares. It is moreover, as Judge, now Mr. Justice Minton, said in *Commissioner* v. *John Kelley Co.* (C. C. A., 7th Cir.), 146 Fed. (2d) 466, 468, not "unusual today for preferred stock to have a maturity or retirement date."

There is no more reason for holding these to be interest-bearing obligations on authority of the *Kelley* case than for holding the contrary on the authority of *Talbot Mills*.[4] The *Kelley* and *Talbot Mills* cases were straight *Dobson*[5] decisions. The *Dobson* principle is no longer law. Sec. 36, P. L. 773, 80th Cong., 2d sess.; 26 U. S. C., sec. 1141 (a), amending section 1141 (a), I. R. C. If those cases still stand for anything, it is only the proposition that, as triers of the fact, we have an unavoidable primary obligation which I fear in this instance we are failing to discharge.

VAN FOSSAN, ARNOLD, HILL, DISNEY, and HARRON, *JJ.*, agree with this dissent.

---

[4] Even the *Kelley* case as viewed by the Supreme Court is not authority for the present result. A factor, relating not to the terms of the obligation, but to the surrounding circumstances, was evidently regarded as significant in the *John Kelley Co.* and *Talbot Mills* cases. It serves to indicate the nondeductibility of the present claim. That is the lack of any consideration received by petitioner for the issuance of its so-called obligations, with the consequence that the payments of "interest" can hence not be treated as expended for the use of money or property borrowed or acquired by petitioner by their issuance. Thus, in *John Kelley Co., supra,* the Supreme Court said (326 U. S. 521, 526):

"* * * In the *Kelley* case there were sales of the debentures as well as exchanges of preferred stock for debentures * * * On the other hand, in the *Talbot Mills* case, the Tax Court found the factors there present of * * * the limitation of the issue of notes to stockholders in exchange only for stock, to be characteristics which distinguished the Talbot Mills notes from the Kelley Company debentures * * *.

"We think these conclusions should be accepted * * *."

[5] *Dobson* v. *Commissioner,* 320 U. S. 489.